Clara FRIEND, Plaintiff-Respondent,

v.

Jewell F. Bailey MORROW,
Defendant-Appellant.

No. 38728.

Missouri Court of Appeals,
St. Louis District,
Division One.

Oct. 25, 1977.

interest coupons detached and cashed by appellant. For the reasons discussed below, we affirm the judgment of the trial court.

This case arises out of a dispute between respondent, the wife of P. C. Friend, and appellant, the daughter of P. C. Friend by a previous marriage, over the ownership of some forty-five (45) bonds, among them the ten church bonds at issue here. Respondent sued appellant, charging her with conversion of the bonds and transfer of property with the intent to defraud respondent of her marital rights.

For reversal appellant argues that the trial court erred: (1) in finding that appellant converted the ten church bonds because respondent failed to establish the necessary elements of conversion and (2) in admitting into evidence the deposition of respondent.

P. C. Friend purchased ten $1,000 bonds of the First Baptist Church of Bismarck, Missouri, in January, 1968. Each of the bearer bonds had a serial number and interest coupons attached. Mr. Clyde Ruble, Chairman of the Building and Finance Committees of the First Baptist Church of Bismarck, testified that P. C. Friend purchased the bonds from him and instructed him to deliver them to respondent's home in Bismarck. Mr. Ruble delivered the bonds to respondent's house, placed them on the dining room table and counted them in front of respondent. Mr. Ruble told respondent that her husband had bought the bonds and had instructed him to deliver them to her.

Respondent then testified by deposition. She apparently believed at the time the bonds were delivered that her husband would pick up the bonds later and take them to DeSoto, Missouri. P. C. Friend had lived in DeSoto, Missouri, at the home of a family friend, Cecilia Riley, for about twenty years. He worked in DeSoto during the week and returned to Bismarck on the weekends. Several weekends after delivery, respondent brought up the subject of the bonds. Respondent testified that her

Hux & Green, Jim S. Green, Sikeston, for defendant-appellant.

Medley, Alexander & McIntosh, Charles W. Medley, Dennis E. McIntosh, Farmington, for plaintiff-respondent.

McMILLIAN, Judge.

Defendant-appellant, Jewell F. Bailey Morrow, appeals from a judgment of the circuit court of St. Francois County granting possession to plaintiff-respondent Clara Friend of ten church bonds or, if respondent does not recover the bonds, respondent is awarded the sum of $11,200 or the face value of the bonds plus the value of the

husband said, ". . . 'They belong to you; I'm going to give those bonds to you' . . . .'" Respondent put the bonds in the drawer of her buffet and intended to put them in a safety deposit box but never did. She kept the bonds about one year until she became ill and was hospitalized. She asked her niece Margie Kohn to call P. C. to take the bonds and put them in a safe place because there was no one in her house while she was in the hospital. P. C. picked up the bonds and returned to DeSoto.

P. C. was hospitalized in St. Louis, Missouri, in 1974. He requested Cecilia Riley to go to DeSoto and pick up the bonds and give them to his daughter (appellant). Mrs. Riley testified that she delivered the bonds to appellant on July 31, 1974. Appellant retained the bonds and cashed several of the interest coupons as they became due.

P. C. Friend died September 1, 1974.

We review this court-tried case as set forth in *Murphy v. Carron,* 536 S.W.2d 30 (Mo.banc 1976). The judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32. Appellant first argues that the trial court erred in finding that appellant converted the church bonds because respondent failed to establish the necessary elements of conversion. ". . . [I]n order to maintain an action for conversion, the party claiming aggrievement must have title to, or a right of property in, and a right to the immediate possession of the property concerned at the time of the alleged conversion . . ." *Kessler v. Reed,* 481 S.W.2d 559, 562 (Mo. App.1972). We believe there is substantial evidence to support the finding of the trial court that respondent is the owner of the church bonds.

Respondent claimed the church bonds were a valid *inter vivos* gift to her from P. C. Friend. "The essentials of an *inter vivos* gift of personal property . . . are . . . 'a present intention to make a gift on the part of the donor, a delivery of the property by the donor to the donee, and an acceptance by the donee, whose ownership takes effect immediately and absolutely.'" *Wantuck v. United Sav. & Loan Ass'n,* 461 S.W.2d 692, 694 (Mo.1971) (citations omitted), quoting *Thomas v. Thomas,* 107 Mo. 459, 18 S.W. 27, 28. We believe that respondent clearly established delivery, present donative intent and acceptance and therefore a complete *inter vivos* gift. Mr. Clyde Ruble delivered the bonds to respondent according to the instructions of the donor. Apparently P. C. Friend expressed the intent to give the bonds to respondent *after* their delivery because several weeks later he told respondent "[the bonds] belong to you; I'm going to give those bonds to you." It is not essential, however, that ". . . delivery of the property be simultaneous with the words of donation . . . [If delivery] precedes the words, so that the property is already in the possession of the donee, no new delivery is necessary. . . ." 38 Am.Jur.2d, Gifts, § 21 (1968). The donor's words expressed ". . . a clear, unmistakable, and unequivocal intention" to make a gift. *Id.* § 17; *e. g., Harris Banking Co. v. Miller,* 190 Mo. 640, 89 S.W. 629 (1905); *In re Estate of Simms,* 423 S.W.2d 758 (Mo.1968). Respondent placed the bonds in the buffet drawer thereby exercising the necessary dominion over the subject of the gift to constitute acceptance.

Appellant does not contend that P. C. Friend gave her the bonds. Appellant received custody of the bonds because P. C. Friend, at that time in the hospital, requested his friend Cecilia Riley to deliver them to appellant. P. C. Friend had possession of the bonds because respondent had become ill and had requested P. C. to pick them up for safekeeping. Respondent testified that she was hospitalized at this time and was worried about the security of the bonds in her empty house. The return of the subject

matter of a completely executed gift by the donee to the donor for a purpose not inconsistent with the gift, such as safekeeping, will not render the gift invalid. 38 Am. Jur.2d, Gifts, § 27 (1968); e. g., *Snyder v. Stouffer*, 270 Md. 647, 313 A.2d 497 (1974).

 Appellant also argues that she enjoys a presumption of ownership as the present holder of the bearer bonds which respondent has failed to rebut. Upon delivery of an investment security such as bearer bonds the purchaser acquires the rights in the security which his transferor had or had actual authority to convey, § 400.8–301(1) RSMo 1969. In this case P. C. Friend did not have any rights in the security or actual authority to convey. A completely executed gift operates as between the parties to the transaction as a full and complete transfer of the title to the property from the donor to the donee. 38 Am.Jur.2d, Gifts, § 76 (1968). It is true that a bona fide purchaser or a purchaser for value in good faith and without notice of any adverse claim who takes delivery of a security in bearer form, § 400.8–302, RSMo 1969, acquires the security free from any adverse claim. *Id.* § 400.8–301(2). Appellant, however, does not meet all the requirements of a bona fide purchaser. There is no evidence that appellant received the church bonds for value. *Id.* § 400.3–303; 11 Am.Jur.2d, Bills and Notes, § 343 (1963).

Furthermore, " . . . even though a donee of a valid gift *inter vivos* is not in possession of the property given, the gift is binding upon persons claiming under the donor, and [the donee] has a title superior to that of a subsequent purchaser or encumbrancer with notice of the gift . . . " 38 Am.Jur.2d, Gifts, § 77 (1968). Appellant does not claim the status of a subsequent purchaser or encumbrancer *without* notice, only that she is the present holder of the bonds. For the reasons discussed above, we hold that the bonds were the subject of a valid *inter vivos* gift to respondent and were converted by appellant.

 Appellant further argues that the trial court erred in admitting into evidence the deposition of respondent taken September 25, 1975. Appellant argues that respondent's deposition was inadmissible under Rule 57.07, V.A.M.R. (1976), and under the Dead Man Statute, § 491.010, RSMo 1969. The record shows that appellant submitted interrogatories to respondent which were answered. This constituted a waiver of the incompetency of respondent as a witness under the Dead Man Statute, e. g., *Watkins v. Watkins*, 397 S.W.2d 603, 611 (Mo.1965); *Edwards v. Durham*, 346 S.W.2d 90, 99 (Mo. 1961); *Lehr v. Moll*, 247 S.W.2d 686, 690 (Mo.1952).

 In essence appellant contends that the deposition of a party cannot be used as evidence because the rule mentions only the depositions of witnesses. We disagree. Rule 57.07(a)(3), V.A.M.R., states that "[t]he deposition of any witness who is not present in court may be used by any party for any purpose if the court finds . . . that by reason of age, sickness, bodily infirmity or imprisonment, the witness is unable to or cannot safely attend court . . . ." The finding as to the inability of a witness to attend court rests largely within the discretion of the trial court. *Boyle v. Crimm*, 363 Mo. 731, 253 S.W.2d 149 (1952); cf. *Key v. Kilburn*, 228 S.W.2d 731 (Mo.1950) (deposition of witness taken in anticipation that his mental condition might deteriorate held inadmissible where no evidence was offered as to any change in witness' mental condition); *Null v. Gray*, 534 S.W.2d 823 (Mo.App.1977) (physician engaged in the discharge of his professional duties at time of trial).

 Dr. M. Beck, respondent's personal physician, made a statement that certified respondent as physically unable to attend any court proceeding. Dr. Beck also testified that it was his opinion that it would be unwise for respondent to appear in court due to respondent's condition and advanced age. He testified that respondent was 82 or 83 years old at the time of trial, had vascular disease and sclerotic heart disease,

her condition was deteriorating and had ulcers of the lower extremities, shortness of breath and some cerebral anxiety. Respondent testified at her deposition that she had sores on her legs and high blood pressure. She also stated that she only left her house to go see the doctor. This evidence was sufficient to establish that respondent was unable to attend court by means of age, sickness and bodily infirmities so as to authorize the use of her deposition. *Obermoeller v. Speck*, 544 S.W.2d 21 (Mo.App. 1977). In *Obermoeller*, supra, the deponent was 76 years old at the time of the deposition, had had infantile paralysis since the age of two, suffered from dropsy, heart trouble, high blood pressure and edema, and had left her house only three times in the past eleven years, twice in an ambulance to go to the hospital.

 The definition of witness is "a person whose testimony is desired in any proceeding . . .." § 491.400(3) RSMo 1969. The definition does not exclude parties. Rule 57.03, V.A.M.R. (1976) permits "any party[to] take the testimony of any person, including a party, by deposition upon oral examination." In *State ex rel. Chandler v. Scott*, 427 S.W.2d 759 (Mo.App. 1968), relator, petitioner in a proceeding for divorce and custody of the children of the marriage, asked the trial court to allow him to take his own deposition by *written* interrogatories. Relator's inability to appear personally was due solely to his military service; relator was at that time in Camp Pendleton, California, en route to Vietnam. The court noted that the Federal Rules which were the basis for the applicable Missouri Rules of Civil Procedure, since repealed and replaced, have been construed to allow a party to take his own deposition in exceptional circumstances. *Id.* at 761. The court then stated that the right of a party litigant to take the deposition of any witness is an absolute right and permitted relator to direct interrogatories to himself. *Id.* at 762.

In the present case appellant was given proper notice of the time of respondent's deposition and failed to appear. The evidence established that respondent was aged, ill and suffered from bodily infirmity such that she would be unable to attend court. In these circumstances we do not think the trial court erred in admitting into evidence respondent's own deposition.

Accordingly, judgment is affirmed.

CLEMENS, P. J., and SMITH, J., concur.