LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL–CIO LOCAL NO. 42, et al., Plaintiffs,

v.

William F. SMITH, Attorney General of the United States of America, et al., Defendants.

No. 81–313–C(4).

United States District Court, Missouri, E.D.

Sept. 27, 1983.

---

**28.** *See* Plaintiff's Rejoinder Memorandum in Support of Motion for Summary Judgment at 16–18 (filed May 5, 1983).

Richard C. Witzel, Burton H. Shostak, Shostak & Witzel, St. Louis, Mo., for plaintiffs.

David M. Rosen, Asst. U.S. Atty., E.D. Mo., St. Louis, Mo., Evelyn Wright, U.S. Dept. of Labor, Div. of Labor Management Law, Washington, D.C., for defendants.

MEMORANDUM

CAHILL, District Judge.

Presently before the Court are plaintiffs' and defendants' respective motions for summary judgment as to Count III of plaintiffs' first amended complaint.

Plaintiff Larry Flynn is a member and an official of Laborers' International Union of North America, AFL–CIO, Local No. 42 (Local 42). In 1979 Flynn pled guilty to a state charge of burglary before the Honorable V. James Ruddy, Circuit Judge for St. Louis County, Missouri. Defendants informed plaintiffs that because Flynn was convicted of a burglary in April of 1979, Flynn was barred from serving as a union official until April of 1984. *See* 29 U.S.C. § 504 (1976). In response, plaintiffs brought this declaratory judgment action to prevent defendants from removing Flynn from office or prosecuting Flynn under § 504.

Plaintiffs allege in Count III of their first amended complaint that, assuming Flynn was convicted at all, his "conviction" dates from May 19, 1977, when Flynn entered a plea of guilty on the state burglary charges. Flynn withdrew his guilty plea on March 6, 1979, after Judge Ruddy, Flynn's original sentencing judge, was disqualified at Flynn's request. Apparently FBI agents had informed Judge Ruddy in July of 1976 that Flynn was a part of an interstate burglary ring and that Flynn might attempt to bribe the judge. State officials also gave Judge Ruddy access to extra-judicial information to which Flynn objected. Flynn's motion to disqualify only mentioned the state officials' contact with Judge Ruddy as grounds for disqualification. Flynn subsequently pled guilty to the same burglary charge a second time, but before a different judge, on April 3, 1979. It is plaintiffs' contention that defendants should be equitably estopped from using the April 1979 date to calculate the five year exclusion period because Flynn was forced to withdraw his initial guilty plea and plead anew due to the Government's misconduct. Rather, plaintiffs' argue that the May 19, 1977 date should be used and

Flynn be permitted to serve as a union official as of May 1982.

This matter has troubled the Court for some time. Initially, the Court held that "Flynn's plea of guilty and suspended imposition of sentence must be construed as a conviction under § 504 which bars his continued service as a union official." *Local 42 v. Smith,* No. 81–313–C(5), mem.op. at 4 (E.D.Mo. Sept. 22, 1981). Thereafter, plaintiffs were granted leave to amend their complaint to include Count III. At the same time, the Court entered judgment against plaintiffs on Count III because, between the date Flynn withdrew his guilty plea and the date he pled guilty for the second time, Flynn was free to change his plea and demand a full scale trial. Thus, Flynn's "conviction" was held to occur in April of 1979 when he pled guilty with finality *and* the Court performed the judicial act of passing judgment on his sentence, *albeit* a suspended imposition of sentence. *Local 42 v. Smith,* No. 81–313–C(5), mem.op. at 5 (E.D.Mo. March 30, 1982). The Court subsequently reconsidered its decision and vacated the March 30th judgment. The defendants responded with a motion to dismiss under Fed.R.Civ.P. 12(b) which was denied. The Court stated that the issue whether the defendants were equitably estopped from using April 1979 as Flynn's conviction date could be resolved "only after obtaining additional evidence at trial or, if appropriate, by affidavits on motion for summary judgment." *Local 42 v. Smith,* mem.op. at 2 (E.D.Mo. May 24, 1982). Plaintiffs then submitted the affidavits of Flynn's attorneys and Judge Ruddy and moved for summary judgment. The Court stayed ruling on the motion for thirty days in order to permit defendants to complete their discovery. The parties were directed to two important factual questions which were unresolved at that time: (1) whether Larry Flynn actually withdrew his guilty plea and under what circumstances, and (2) the reasons why Flynn did not re-enter his guilty plea until nearly two years after the first plea was withdrawn or vacated. After additional discovery and submissions to the Court these questions have been answered. The Court now has both parties' motions for summary judgment before it. This case is ripe for summary disposition.

■ Although the doctrine of estoppel may be applied against the Government, it is to be applied with caution. *Goldstein v. United States,* 227 F.2d 1, 4 (8th Cir.1955). The keystone element of any estoppel claim is causation and is especially important where estoppel is sought against the Government. A party claiming estoppel against the Government must at least show that he changed his position, that the change in position injured him, and that the injurious change in position was a direct result of misconduct on the part of the Government. *See United States v. Aetna Casualty & Surety Co.,* 480 F.2d 1095, 1099 (8th Cir.1973). *See also United States Immigration & Naturalization Service v. Hibi,* 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973).

■ The injury plaintiffs' claim they suffered is the two year delay between Flynn's first and second guilty pleas. Plaintiffs contend that the Government's misconduct in prejudicing Judge Ruddy against Flynn was the direct cause of Flynn's motion to disqualify Judge Ruddy. In turn, Judge Ruddy required Flynn to withdraw his initial guilty plea as a condition of Judge Ruddy's disqualification. Plaintiffs argue that, but for the Government's misconduct, Flynn's original guilty plea would have stood and Flynn would be eligible to hold his union office in 1982. For several reasons, plaintiffs' argument is unconvincing.

At the outset the Court will assume, for purposes of this decision only, that the Government's conduct in regard to Judge Ruddy was wrongful. However, the wrongfulness of the Government's conduct is irrelevant to the dispositive issue in this case: "Who was responsible for the two year delay between Flynn's first and second plea?" The first response to the substance of plaintiffs' estoppel argument is that Judge Ruddy testified at his deposition

that he told Flynn's first counsel about the FBI contact while counsel still represented Flynn. Flynn's first counsel withdrew in April of 1977, before Flynn entered his initial guilty plea. Therefore, at the time Flynn first pled guilty he could have moved to disqualify Judge Ruddy on the basis of the federal government's misconduct. He did not. Instead, Flynn requested that Judge Ruddy put off imposing sentence until Flynn was able to complete expensive medical treatment for the wounds he received during the gun battle that led to Flynn's arrest. Judge Ruddy had let Flynn's counsel know that, barring some exceptional and unforeseen circumstances, he would sentence Flynn to four years in jail. Judge Ruddy did grant Flynn the delay, based on Flynn's representations that he would lose his medical insurance benefits if he was sentenced to prison. Two years later, Judge Ruddy fortuitously saw Flynn and noticed that Flynn was not suffering from any apparent disability. Judge Ruddy, therefore, called Flynn in to be sentenced. It was at this juncture, just prior to imposition of sentence, that Flynn moved to disqualify Judge Ruddy. Thus, even if the Government's misconduct forced Flynn to disqualify Judge Ruddy and withdraw his guilty plea, the Government's misconduct did not cause the two year delay. Rather, it was Flynn's desire to stay out of prison that caused the delay. It must be remembered that Flynn was harmed by the two year delay and not the Government's misconduct. The Government's misconduct was remedied when Judge Ruddy was disqualified. It could have been remedied much earlier. Flynn, however, chose to hold his ace-in-the-hole to delay as long as possible his judgment day.

A second response is that Flynn's date of conviction would be April of 1979 even if Flynn or his counsel did not discover the FBI's contact with Judge Ruddy until after Flynn originally pled guilty. Until the moment the sentencing judge passed judgment on the sentence, if any, Flynn would serve, Flynn was not "convicted" for purposes of § 504. Up until that time, Flynn could have withdrawn his guilty plea and demanded a full scale trial. Thus, even if Flynn had never withdrawn his guilty plea, his conviction date for purposes of § 504 is the date his guilty plea is accepted *and* the sentencing judge performs the judicial act of recording his decision on the question of the defendant's sentence, even if that decision is a suspended imposition of sentence. *Cf. United States v. Rosenstengel*, 323 F.Supp. 499, 500, 502 (E.D.Mo.1971).

Accordingly, judgment is entered in favor of the defendants and against the plaintiffs on Count III of the amended complaint.